**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KEITH WATERS,

                              Plaintiff,

             v.                                           No. 15-CV-0805
                                                            (TJM/CFH)
SGT. A. MELENDEZ and
C.O. MUSCHETT,

                              Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

Keith Waters
06-A-2999
Wallkill Correctional Facility
Box G
Wallkill, NY 12589
Plaintiff <u>pro se</u>

HON. ERIC T. SCHNEIDERMAN          NICOLE E. HAIMSON, ESQ.
Attorney General for the                   Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff <u>pro se</u> Keith Waters ("Waters"), an inmate who was, at all relevant times, in

the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Sgt.

_____

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

A. Melendez ("Defendant" or "Melendez") and C.O. Muschett ("Defendant" or "Muschett") – who, at all relevant times, were employed at Coxsackie Correctional Facility ("Coxsackie") – violated his rights under the First Amendment.  Dkt. No. 23 ("Sec. Am. Compl."). Presently pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Dkt. No. 81.  Waters opposed the motion, and Defendants submitted a reply.  Dkt. Nos. 83, 84, 85.  For the following reasons, it is recommended that Defendants' motion for summary judgment be granted on the basis of plaintiff's failure to exhaust.  Alternatively, if the District Court Judge should not agree with the undersigned's recommendation, it is recommended that Defendants' motion for summary judgment be granted in part and denied in part.

## I. Background

## A. Procedural History

On July 1, 2015, plaintiff filed his complaint in the pending action.  Dkt. No. 1 ("Compl.").  On July 25, 2015, Plaintiff filed a motion to amend with a proposed amended pleading asserting that Sgt. Melendez, Lt. Sheridan ("Sheridan"), Hearing Officer ("H.O.") Eric Gutwein ("Gutwein"), and Director of SHU/Inmate Disciplinary Program Albert Prack ("Prack") retaliated against him, and disciplined him in violation of his due process rights. Dkt. No. 5-2.  The Court accepted the Amended Complaint and, upon review, directed Defendants to respond.  Dkt. Nos. 10 and 11 ("Am. Compl.").  On October 7, 2015, Waters filed a motion to amend, and added Muschett and John/Jane Doe defendants.  Dkt. Nos. 13-2, 13-3 at 2.  The Court accepted the Second Amended Complaint and directed

Defendants to respond.  Dkt. Nos. 22; Sec. Am. Compl.  On February 11, 2016, Defendants filed an Answer to the Second Amended Complaint.  Dkt. No. 33.  On March 10, 2016, after defense counsel identified the John/Jane Doe defendants, the Second Amended Complaint was amended to include Scott Lamphere ("Lamphere"), Opal Rivera ("Rivera"), and Corey Bedard ("Bedard") as Defendants.  Dkt. No. 36.  Additionally, Lt. Sheridan was terminated as a defendant.[2]  Dkt. No. 37.

On June 21, 2016, Defendants filed a motion to dismiss the Second Amended Complaint as duplicative of Waters v. Prack, No. 9:13-CV-1437 (LEK/DEP) (N.D.N.Y. Nov. 20, 2013) ("Waters I"), a concurrent action pending in this District.[3]  Dkt. No. 53. Alternatively, defendants Bedard, Lamphere, and Rivera moved for dismissal of the Second Amended Complaint for failure to state a claim.  Id.  In a Report-Recommendation and Order filed on January 31, 2017 (the "January Order"), the undersigned recommended the dismissal of the claims against Gutwein and Prack as duplicative, holding that: "[t]he claims alleged against Gutwein and Prack in each suit arise from the same MBR and subsequent disciplinary proceedings.  In both suits, plaintiff has asserted First Amendment retaliation and Fourteenth Amendment due process claims against Gutwein and Prack." Dkt. No. 63 at 7.[4]  The Court also recommended dismissal of Waters' claims against

---

[2] Defense counsel advised that Sheridan was deceased.

[3] The complaint in Waters I, filed in November 2013, included procedural due process and retaliation claims against Gutwein and Prack.  Waters I, Dkt. No. 42.

[4] Throughout this Report-Recommendation, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

Bedard, Lamphere, and Rivera as conclusory and insufficient to state a claim.[5]  Dkt. No. 63.  On March 13, 2017, the District Court Judge Thomas J. McAvoy adopted the undersigned's Report-Recommendation and Order.  Dkt. No. 68.  Thus, the only claims surviving dismissal are First Amendment claims against Sgt. Melendez and C.O. Muschett based upon an alleged January 2013 false misbehavior report issued in retaliation for Waters filing a sexual harassment claim against a non-party officer, and providing legal assistance to other inmates.  Id.

## B.  Record and Judicial Notice[6]

In support of their motion, Defendants filed a Statement of Material Facts.  Dkt. No. 81-1.[7]  Pursuant to N.D.N.Y. Local Rule 7.1(a)(3), Waters responded, and admitted facts

---

[5] On March 13, 2017, the Court issued a Decision and Order adopting the Report-Recommendation and Order.  Dkt. No. 68.

[6] All unpublished decisions cited herein, unless otherwise indicated, are attached to this Report-Recommendation.

[7] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. *Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

Local Rule 7. 1(a)(3) (emphasis in original).

4

contained in certain paragraphs of Defendants' Statement of Material Facts. Dkt. No. 83-2. Both parties annexed exhibits to their submissions, without objection, related to the authenticity of documents. See generally Dkt. Nos. 81, 83. Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits and/or documents in the context of the pending motion. See U.S. v. Painting known as Hannibal, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.")).

Additionally, the undersigned will consider relevant exhibits and documents filed with the Court under Docket No. 84. On October 2, 2017, the same date that Waters filed his response to Defendants' motion, Waters filed documents obtained during the course of discovery. Dkt. No. 84. In his opposition to the motion for summary judgment, Waters cites to these documents and incorporates them by reference. See generally Dkt. No. 83. Because defendants did not object to the filing of these documents, and do not object to the authenticity of these documents, the undersigned will also consider the relevant exhibits and/or documents in the context of the within motion.

Finally, the undersigned will consider documentation and exhibits filed in Waters I. During the course of litigation in Waters I, Waters and defendants filed motions for summary judgment and memorandums in opposition to those motions. Waters I, Dkt. Nos. 24, 47, 48, 110, 116, 120. In support and in opposition to the motions for summary

judgments, the parties submitted documents and exhibits including: (1) the transcript from Waters' January/March 2013 disciplinary hearing; (2) the Decision and Order on Waters' Article 78 petition; (3) Waters' Disciplinary History; and (4) records related to Waters' appeal of the disciplinary determination. Waters I, Dkt. No. 110-4 at 21-33; Dkt. No. 116-2 at 15-18; Dkt. No. 116-3 at 2; Dkt. No. 110-5 at 14. The parties did not dispute the authenticity of these public records. When deciding a motion for summary judgment, a Court may take judicial notice of its own records of prior litigation, particularly when the records of prior litigation "closely relate" to the case before it. See In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 839 (2d Cir. 1992) (citing, inter alia, St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1171-72 (10th Cir. 1979)) ("[A] court may: consider stipulations, concessions of counsel, transcripts, exhibits and other papers[.]"); see also Graham v. City of New York, 869 F. Supp. 2d 337, 343 (E.D.N.Y. 2012) (incorporating by reference a petition that the plaintiff referred to in the complaint, was in the plaintiff's possession, and was relied on by him in pleading); Bernier v. Koenigsmann, No. 9:17-CV-254 (DNH/ATB), 2017 WL 8230891, at *5 (N.D.N.Y. Nov. 22, 2017) ("[T]he court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions.") (citations omitted). Accordingly, the court will, sua sponte, take judicial notice of certain relevant records in Waters I.[8]

---

[8] In opposition to the within motion, Waters provided excerpts of the transcript from his disciplinary hearing and a portion of the Decision and Order granting his Article 78 petition. Dkt. No. 84. The complete transcript from the disciplinary hearing and complete Decision on the Article 78 petition were annexed as exhibits to defendants' motion for summary judgment in Waters I.

### C. Facts

The facts are reviewed in the light most favorable to Waters as the non-moving party. See subsection II(A) infra. At the time of the incident described in the Second Amended Complaint, Waters was confined at Coxsackie and Greene Correctional Facility ("Greene"). See Sec. Am. Compl.

From June 2006 until January 17, 2013, Waters was confined at Coxsackie C.F. Dkt. No. 81-5 at 13. From December 2006 until August 2011 and from October 2011 until January 2013, Waters worked as a clerk in the law library. Id. at 17. As a law library clerk, Waters was not permitted to accept compensation in exchange for legal services provided to other inmates. Id. at 65.

In June 2010, Waters filed a Prison Rape Elimination Act ("PREA") sexual assault complaint against non-party Corrections Officer Jody Slater ("Slater"), a Cocksackie law library supervisor. Dkt. No. 81-5 at 20-22. A copy of his complaint was filed with the Eastern District of New York in support of Waters' habeas corpus petition.[9] Id. at 51.

Waters alleges that his PREA complaint was "common knowledge" within the facility. Dkt. No. 81-5 at 24. From September 2012 until November 2012, Sgt. Melendez threatened Waters with disciplinary action for providing legal assistance to certain inmates, and specifically mentioned Slater and the PREA complaint. Dkt. No. 81-5 at 19, 27-30.

---

[9] Waters filed a Habeas Corpus Petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York. See Waters v. Martuscello, No. 1:10-CV-5700, Dkt. No. 1 (E.D.N.Y. Nov. 24, 2010) ("Waters II"). During the course of the litigation, Waters filed a letter addressed to the presiding Judge and dated June 13, 2010, but received by the Court on June 22, 2011. Waters II, Dkt. No. 21. In that letter, Waters advised that Slater intimidated and threatened him with "special confinement." Id. at 2. On June 22, 2011, the Court received a letter, dated June 15, 2011, from Waters accusing Slater of forcing him to perform a sexual act. Waters II, Dkt. No. 22. The second letter was filed, under seal.

Waters also claims that Sgt. Melendez referred to him as "Johnnie Cochran" and asked Waters to provide legal assistance for his nephew. Id. at 30-37. Sgt. Melendez asked Waters how much it would cost for Waters to assist his nephew, who "might come up north" to Coxsackie. Id. Waters assumed that Sgt. Melendez was attempting to "set him up," and he informed Sgt. Melendez that he did not charge for legal assistance. Id. at 37.

On January 17, 2013, Waters was transferred to Greene C.F. Dkt. No. 81-6 at 2. On January 18, 2013, Sgt. Melendez, who was assigned to the Coxsackie Special Housing Unit issued plaintiff an Inmate Misbehavior Report (the "misbehavior report"), charging him with disobeying a direct order (106.10) and receiving compensation for legal services (180.17). Dkt. No. 81-11 ¶ 20; Dkt. No. 81-13. Waters received the misbehavior report the next day. Dkt. No. 81-5 at 85. On January 18, 2013, Sgt. Melendez, who was assigned to the Special Housing Unit ("SHU"), issued the misbehavior report and charged Waters with disobeying a direct order and receiving compensation for legal services. Dkt. No. 81-11 at ¶ 20; Dkt. No. 81-13. In that misbehavior report, Sgt. Melendez alleged that:

> On the above date and approx 2:00 p.m., while retrieving a hearing tape that was illegally sent to the law library by Inmate Burroughs.[10] A letter was found in an envelope that was addressed to inmate Waters 06A2999, who used to work in the law library. In this letter, Burroughs insinuates that he was and in the past has paid for legal services from inmate Waters. A copy of the letter is attached but states as follow: "We will do the same agreement as the first time, that will get to you in about 2 weeks. You know I am a man of my word." I confronted Burroughs with the letter, he immediately admitted to paying inmate Waters for the legal services he had provide to him in the past and of his willingness to pay for it this time again. Officer Muschett, the

---

[10] Inmate Burroughs' name was redacted from the misbehavior report. Dkt. No. 81-13 at 2.

> law library officer, informed me that he has advised inmate Waters in the past that he is not allowed to receive compensation for legal services provided to other inmates.

Dkt. No. 81-13 at 2.

The misbehavior report did not include the date, time, or place that Burroughs allegedly paid Waters for legal services. See Dkt. No. 81-11 ("Melendez Decl.") ¶ 24; Dkt. No. 81-13 at 2. The "Incident Date" reflects the date that the letter arrived in the law library. Melendez Decl. ¶ 24. Sgt. Melendez did not preserve the envelope or cassette tape seized from Burroughs. Dkt. No. 83 ¶¶ 6, 7.

Sgt. Melendez investigated the incident, and interviewed Burroughs and C.O. Muschett. Melendez Decl. ¶¶ 16, 18, 19. C.O. Muschett advised Sgt. Melendez that when he became the Law Library Officer in 2009, he re-instructed Waters that he could not accept compensation. Melendez Decl. ¶¶ 18, 19. Sgt. Melendez also claims that Burroughs admitted that he previously paid Waters for legal services and was attempting to do so again. Id. ¶¶ 2, 3, 16.

Waters asserts that Sgt. Melendez's report is "fictitious." Dkt. No. 81-5 at 46. Waters claims that all outgoing communication from the SHU would have been searched, confiscated as contraband, photographed as evidence, and preserved for a disciplinary hearing. Dkt. No. 83 at ¶¶ 3, 4. Waters maintains that although he previously provided legal services for Burroughs, he never accepted favors, commissary, money, cigarettes, or any items in exchange for the services. See Dkt. No. 81-5 at 55-60. Waters testified that he never traded for legal services with any inmate. Id. Waters also asserts that when C.O. Muschett assumed the role of library supervisor, he did not direct Waters not to accept

compensation or reiterate the rules.  Id. at 70-71.

On January 22, 2013, H.O. Gutwein presided over a Tier III disciplinary hearing related to the misbehavior report.  Dkt. No. 84 at 7; Waters I, Dkt. No. 110-4 at 21-32.  During the disciplinary hearing, C.O. Muschett testified that he was not aware of Waters charging Burroughs, or any other inmate, for legal services.  Dkt. No. 84 at 9-10.  Sgt. Melendez testified that his investigation did not reveal the type of assistance Waters provided Burroughs or the form of compensation that Waters received.  Waters I, Dkt. No. 110-4 at 27-28.

At the conclusion of the hearing, H.O. Gutwein found Waters not guilty of refusing a direct order, but guilty of providing unauthorized legal assistance.  Dkt. No. 84 at 7.  H.O. Gutwein sentenced three months of SHU confinement, with a loss of packages, commissary, and telephone privileges for a corresponding period, and recommended that Waters forfeit three months of good time credits.  Dkt. No. 84 at 7.

In March 2013, Plaintiff appealed the disciplinary determination to Prack.  Dkt. No. 81-7.  On May 8, 2013, Prack affirmed the decision.  Waters I, Dkt. No. 110-5 at 14.  In May 2013, Waters commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules challenging the Tier III determination.  Dkt No. 84 at 12-14.  Plaintiff's Article 78 petition was granted and, the Albany County Supreme Court concluded that the misbehavior report failed to comply with the notice requirements under 7 N.Y.C.R.R. § 251-3.1.  Id.  The Court ordered that H.O. Gutwein's determination be annulled and all references to it be expunged from Waters' records.  Id.; Dkt. No. 81-5 at 80.  By the time the Article 78 determination was issued and implemented, Waters had already served seventy days of his

sentence. Waters I, Dkt. No. 42 at 13.

During his confinement with DOCCS, Waters was familiar with the grievance process and, specifically, DOCCS' Directive 4040.  Dkt. No. 81-5 at 75-76.  Waters previously advised other inmates on the grievance process and filed a grievance on his own behalf, unrelated to Sgt. Melendez, C.O. Muschett, or retaliation.  Dkt. No. 81-5 at 76; Dkt. No. 81-8 ("Seguin Decl.") ¶ 13. While Waters was confined at Greene, the inmate grievance process was available, and he successfully received and sent mail.[11]  Dkt. No. 81-5 at 80, 84-85. Waters did not file any grievance against Defendants for alleged retaliation.  Id. at 74, 76, 88.  In 2014 and 2015, Waters filed two grievance appeals unrelated to Sgt. Melendez, C.O. Muschett, or retaliation. Seguin Decl. ¶ 14.

## II.  Motion for Summary Judgment

Waters contends that Defendants retaliated against him in violation of the First Amendment.  See generally Sec. Am. Compl.  Defendants move for summary judgment on the grounds that: (1) Waters cannot establish a retaliation claim against Defendants; and (2) Waters failed to exhaust his administrative remedies.  See generally Dkt. No. 81.

## A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed

---

[11] Plaintiff remained at Greene C.F. until March 29, 2013.  Dkt. No. 81-6 at 3.

material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest

> arguments that they "suggest," . . . . At the same time, our
> cases have also indicated that we cannot read into <u>pro se</u>
> submissions claims that are not "consistent" with the <u>pro se</u>
> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not
> "excuse frivolous or vexatious filings by <u>pro se</u> litigants," . . .
> and that <u>pro se</u> status "does not exempt a party from
> compliance with relevant rules of procedural and
> substantive law . . . .

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537

F.3d 185, 191-92 (2d Cir. 2008).


### B. Exhaustion

Sgt. Melendez contends that the motion for summary judgment must be granted

because Waters failed to exhaust his administrative remedies through available grievance

procedures. <u>See</u> Dkt. No. 81-2 at 9-14. The Prison Litigation Reform Act ("PLRA") requires

that a prisoner exhaust any administrative remedies available to him or her before bringing

an action for claims arising out of his or her incarceration. <u>See</u> <u>Porter v. Nussle</u>, 534 U.S.

516, 524 (2002); <u>see also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 82 (2006). The exhaustion

requirement applies "to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some

other wrong." <u>Porter</u>, 534 U.S. at 532. Further, the exhaustion requirement applies even

where the prisoner seeks relief not available in the administrative grievance process, such

as monetary damages. <u>Id.</u> at 524. To exhaust administrative remedies, the inmate must

complete the full administrative review process set forth in the rules applicable to the

correctional facility in which he or she is incarcerated. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199,

218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016).  Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[12]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.  Lastly, administrative remedies are

_____

[12] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception.  See Williams, 829 F.3d at 123.  The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Application[13]

In support of the motion for summary judgment, defendants proffer the declarations of Assistant Director of the Inmate Grievance Program ("IGP") Rachel Seguin and Greene IGP Supervisor Thomas Mauro. See Seguin Decl.; Dkt. No. 81-10 ("Mauro Decl."). Both Ms. Seguin and Mr. Mauro aver that a claim of retaliation is the proper subject for a grievance. Seguin Decl. ¶ 9; Mauro Decl. ¶ 9. A review of DOCCS records establishes that Waters did not file any grievances while housed at Greene in 2013, nor did he appeal any grievances to CORC during that year. Seguin Decl. ¶¶ 10, 12; Mauro Decl. ¶ 12. Waters concedes that he did not file a grievance related to the alleged retaliation. Dkt. No. 81-5 at 74. As there is no dispute that Waters failed to exhaust his administrative remedies, the undersigned must only assess whether administrative remedies were available to Waters. In that regard, Waters sets forth three arguments to establish that administrative remedies

---

[13] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

were not available to him.

### a. Transfer to Greene C.F.

First, Waters alleges that he was unable to file a grievance related to incidents that occurred at Coxsackie because he was housed at Greene.  Dkt.  No. 83-3 at 10.  While the incident that was the subject of the misbehavior report allegedly occurred at Coxsackie, Waters received the misbehavior report when he was housed at Greene.  Dkt. No. 81-8 at 85; Dkt. No. 81-13 at 2.  Waters does not assert that the grievance process was unavailable to him at Greene, concedes that he was familiar with the grievance process, and testified that he had no issues with his mail while housed at Greene.   Dkt. No. 81-5 at 75, 85. Accordingly, this argument lacks merit.  See Rodriguez v. Senkowski, 103 F. Supp. 2d 131, 134 (N.D.N.Y. 2000) ("[T]he mere fact that Plaintiff has been transferred to another prison facility does not necessarily render the exhaustion requirement moot. It is not clear to the Court why the Plaintiff cannot initiate a grievance against Defendants from his current facility, thereby instigating a review of these individuals' behavior that could lead to sanctions, discipline, and/or a change in the administration of medical care."); see also Rodriguez v. Westchester Cty. Jail Corr. Dep't, Assoc., No. 98 Civ. 2743, 2002 WL 1933953, at *3 (S.D.N.Y. Aug. 21, 2002) (finding that the inmate had ample time to file a grievance, notwithstanding his subsequent transfer.)

### b. Untimely

Waters claims that he did not file a grievance because he was not subjected to a

"final adverse action" until sixty-three days after the misbehavior report was issued, and, thus, unable to file a grievance within the twenty-one day period. Dkt. No. 83-3 at 10. Waters further asserts that he was not eligible for an exception to the time limit. Id. As discussed supra, an inmate must submit a grievance within twenty-one calendar days of the alleged occurrence. See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a). "An inmate may request an exception to the time limit for filing a grievance, . . . and the IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances[.]" Id. at § 701.6(g). Here, Waters concedes that he never filed a grievance nor did he file a request for an extension of time. Thus, because "Plaintiff's failure to exhaust his administrative remedies cannot be excused based upon [his] mere speculation that his grievance would have been denied," this argument does not suffice to excuse his failure to exhaust. Tomony v. Cnty. of Suffolk, No. 10-CV-5726, 2013 WL 55821, at *4 (E.D.N.Y. Jan. 3, 2013) (citation omitted).

### c. Non-Grievable Issue

Waters also claims that the language of § 701.3(e)[14] is "opaque and confusing," and that

---

[14]     A list of "non grievable" issues is set forth in Section 701.3(e) and DOCCS' Directive # 4040:

> e) Non-grievable issues.
>
> (1) An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.
>
> (2) An individual decision or disposition of the temporary release committee, time allowance committee, family reunion program or media review committee is not grievable. Likewise, an individual

he decided not to file a grievance for retaliation because he considered it a "non grievable" issue related to the disciplinary process.  Dkt. No. 83-3 at 8-11.  Waters asserts that the facility provided "mixed messages" with respect to the proper process to grieve retaliation arising from a misbehavior report.  Dkt. No. 81-5 at 87.  Based upon his interpretation of DOCCS' regulations and procedures, inmates are required to raise retaliation claims, related to disciplinary hearings, during the disciplinary process.  Id. at 76-78.  Although Waters admits that he did not file a grievance against Sgt. Melendez, Waters claims that he exhausted his administrative remedies when he filed an appeal of the disciplinary determination and an Article 78 petition.  Id. at 80.  Waters could not recall whether he addressed retaliation in the disciplinary hearing or in any appeal.  Id.

Waters' argument is misplaced.   Courts in this District have held that "[t]hough a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.'"  Barker v. Smith, No. 16-CV-76, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (quoting Scott v. Gardner, 287 F. Supp. 2d 477, 489 (S.D.N.Y.

_____

decision or disposition resulting from a disciplinary proceeding, inmate property claim (of any amount), central monitoring case review or records review (freedom of information request, expunction) is not grievable. In addition, an individual decision or disposition of the Commissioner, or his designee, on a foreign national prisoner application for international transfer is not grievable.

(3) The policies, rules, and procedures of any program or procedure, including those above, are grievable.

Note: If an inmate is unsure whether an issue is grievable, he/she should file a grievance and the question will be decided through the grievance process in accordance with section 701.5 of this Part.

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3.

2003), on reconsideration in part, 344 F. Supp. 2d 421 (S.D.N.Y. 2004), and on reconsideration in part, 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005); see also Labounty v. Johnson, 253 F. Supp. 2d 496, 501 (W.D.N.Y. 2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance.").  "Where the inmate is asserting both retaliation claims and procedural due process claims, he must separately exhaust both types of claim, using the procedure appropriate to each type of claim." Johnson v. Fraizer, No. 16-CV-6096, 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) (citing, inter alia, Washington v. Chaboty, No. 09 CIV. 9199, 2015 WL 1439348, at *7 (S.D.N.Y. Mar. 30, 2015) ("In certain circumstances, however, courts have deemed a disciplinary appeal inadequate to exhaust a claim under the PLRA. Inmate Grievance Program exhaustion has been required, for example, where an inmate alleges retaliation, including retaliation based on the filing of an allegedly false misbehavior report.") (citation omitted)).

Even if the undersigned accepts Waters' claim that DOCCS' regulations regarding the proper grievance procedures for retaliation are confusing and irreconcilable, Waters' excuse nonetheless lacks merit.  During the disciplinary hearing, Waters stated that the misbehavior report failed to provide him with adequate notice of the charges, but did not make any reference to retaliation.  Waters I, Dkt. No. 110-4 at 21-32.  Waters was given the opportunity to question Sgt. Melendez, but did not pose any questions related to retaliation or non-party officer Slater.  Id. at 27-28.  Similarly, while Waters appealed the disciplinary determination, his objections involved issues related to the process afforded at the hearing,

including the sufficiency of the evidence presented. <u>See</u> Dkt. No. 81-7. Specifically, Waters referred to H.O. Gutwein's refusal to provide documents and the absence of "some evidence" supporting the charge. <u>Id.</u> at 2. Waters also claimed that "[t]he hearing was in retaliation of complaints and legal action challenging Greene's procedure of imposing dorm sanction in violation of due process and First Amendment filed by petitioner in the Northern District Court of New York" — a retaliation claim entirely unrelated to Sgt. Melendez and the misbehavior report. <u>Id.</u> With respect to the misbehavior report, Waters claimed that it lacked "the date, time, place or special acts of petitioner to support the charge." <u>Id.</u> Finally, in the Decision and Order granting the Article 78 petition, the Albany County Supreme Court noted that Waters challenged the insufficiency of the misbehavior report because it failed to comply with the regulatory particularity requirements. Dkt. No. 84 at 12-14. Notably absent from the disciplinary transcript or Waters' appeals, is any claim that Sgt. Melendez retaliated against Waters when he issued the misbehavior report.

Waters' argument that the facility was "on notice" of his retaliation claim through the appellate procedure is unsupported by the record. Indeed, the only reference to retaliation in the record is contained in Waters' pleadings and deposition. <u>See</u> Dkt. Nos. 23, 81-5, 83. In cases in this District with similar factual scenarios, Courts have concluded that an appeal of a misbehavior report does not suffice to exhaust retaliation claims, "even if that misconduct formed the basis of the disciplinary proceeding." <u>Smith v. Ashley</u>, No. 9:15-CV-496 (BKS/ATB), 2016 WL 8732642, at *8 (N.D.N.Y. April 1, 2016); <u>see</u> <u>Crosby v. LaValley</u>, No. 9:15-CV-1125 (BKS/ATB), 2017 WL 7050647, at *6 (N.D.N.Y. Dec. 15, 2017) (finding that retaliation claims related to misbehavior report were not properly exhausted due to the

absence of any reference to retaliation in disciplinary hearing transcript, grievances, and use of force report).  Therefore, defendants have met their burden of showing that Waters has failed to exhaust his administrative remedies.  Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85), it is recommended that Sgt. Melendez's motion for summary judgment be granted.

Traditionally, if it is found that the plaintiff has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice.  See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec's. Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted).  "[F]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner . . . can cure the defect by exhausting [the available remedies] and reinstating his suit."  Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999) (internal quotation marks omitted)).  In this instance however, because the events that gave rise to Waters' claims occurred in January 2013 and the time to cure the defect has expired, the undersigned recommends that the dismissal be with prejudice.  See Bridgeforth v. Bartlett, 686 F. Supp. 2d 238, 240 (W.D.N.Y. 2010) ("Since the time limits for plaintiff to file an administrative appeal have long since passed, administrative remedies are no longer available to him, as a result of his own inaction.  This case, then, is precisely the kind of case that the PLRA was intended to foreclose.  It is therefore dismissed with prejudice."); Martin v. Howard, No. 9:03-CV-0712 (LEK/DEP), 2008 WL 323835, at *9 (N.D.N.Y. Feb. 5, 2008) (granting summary judgment, with prejudice, because the plaintiff had "well over one year to exhaust

21

the administrative remedies available to him.").

## B.  First Amendment

Alternatively, if the District Judge were not to adopt or confirm the undersigned's recommendation for dismissal with prejudice on the basis of exhaustion, the undersigned addresses the merits of plaintiff's claim.

### 1. C.O. Muschett

During Waters' deposition, he testified that C.O. Muschett should be dismissed as a defendant in this action.  Dkt. No. 81-5 at 18 ("Muschet [sic], I don't want to say that he retaliated against me because I've never had a problem with Officer Muschet [sic].  So if anything, I think Muschet [sic] actually would more than likely probably need to be dismissed from this action."), 90 ("Again, with Muschet [sic], I'm really not claiming anything against him because I really don't see how any issue against Muschet [sic] can survive.").   In opposition to the motion for summary judgment, Waters presented arguments pertaining only to Sgt. Melendez.  See generally Dkt. No. 83-3.  In light of Waters' assertions at his deposition, and his failure to present any argument in opposition to C.O. Muschett's motion, the undersigned recommends that the motion for summary judgment, as it pertains to C.O. Muschett, be granted.  See Feacher v. Intercontinental Hotels Grp., 563 F. Supp. 2d 389, 399 (N.D.N.Y. 2008) ("The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion.") (internal citation omitted) (citing

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.")).

### 2. Sgt. Melendez

Waters claims that Sgt. Melendez subjected him to a false misbehavior report in retaliation for filing a PREA complaint against Slater, and providing legal assistance to inmates. Dkt. No. 83-3 at 11-23. Sgt. Melendez argues that Waters has failed to establish a causal connection between the misbehavior report and protected speech. Dkt. No. 81-2 at 15-18.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)). A retaliation claim under Section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected

23

speech and the adverse action.'" Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. See Graham v. Henderson, 89 F.3d 75, 81 (2d Cir. 1996).

### a. Protected Speech or Conduct

To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity. See Espinal, 558 F.3d at 128. The Second Circuit has concluded that use of the prison grievance system constitutes a protected activity. See Gill, 389 F.3d at 384; Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover, intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also Roseboro v. Gillespie, 791 F. Supp. 2d 353, 367 (S.D.N.Y. 2011) (finding that the filing of a grievance is a protected activity); Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010) (same). Moreover, providing authorized legal assistance to other inmates is constitutionally protected conduct. See Auleta v. LaFrance, 233 F. Supp. 2d 396, 401 (N.D.N.Y. 2002) (acknowledging that "[t]he Supreme Court found that the prison regulation that prohibited inmates from providing legal assistance to other inmates was unconstitutional unless inmates had alternatives to inmate assistance.") (citing Johnson v. Avery, 393 U.S. 483, 490 (1969)). Plaintiff contends that he was disciplined due to a PREA

complaint filed against a non-party officer, as well as his past legal assistance to other inmates.  See Dkt. No  83-3 at 12.  Thus, Waters satisfies the first prong of the test as he has engaged in a protected activity.  See id.; Gill, 389 F.3d at 384.

### b. Adverse Action

In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Davis, 320 F.3d at 353.  "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone."  Jackson, 549 F. Supp. 2d at 215.  A defendant's retaliatory filing of a falsified misbehavior report that results in disciplinary segregated confinement constitutes adverse action.  See Gill, 389 F.3d at 384 (finding that a false misbehavior report that resulted in the plaintiff's placement in keeplock constituted adverse action); Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (emphasis added) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.").

At the conclusion of the January 2013 disciplinary hearing, H.O. Gutwein sentenced Waters to three months of confinement in the SHU with a loss of packages, commissary, and telephone privileges and recommended that Waters forfeit three months of good time credits.  Dkt. No. 84 at 7.  When Waters' Article 78 petition was ultimately granted in September 2013, he had already served seventy days of the three-month SHU confinement ordered by H.O. Gutwein.  Waters I, Dkt. No. 42 at 13.  Because Waters has established

that Sgt. Melendez's misbehavior report resulted in a period of segregated confinement, the undersigned finds that Waters has satisfied the second prong of the test.  See Gill, 389 F.3d at 384

### c.  Causal Connection

The plaintiff bears the burden of establishing that "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Gayle, 313 F.3d at 682.   A plaintiff "may do so with circumstantial evidence if it is 'sufficiently compelling[.]'" Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). In assessing temporal proximity,

> [t]here is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases.  However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and

citations omitted).

Waters alleges that he filed his PREA complaint against the non-party officer Slater in 2010. Dkt. No. 81-5 at 21. In or about September 2012, Sgt. Melendez began threatening Waters, stating that Slater still worked at the facility, and that Waters "didn't get that much . . . accomplished with him, so . . . [you won't] get much accomplished against any of us." Id. at 27. Sgt. Melendez referred to Waters as "Johnnie Cochran," stated that he was going to "get rid of [his] black ass," and requested that he assist his nephew with legal matters if he became incarcerated. Id. at 30, 35, 38. In January 2013, Sgt. Melendez issued plaintiff the misbehavior report. Dkt. No. 81-13 at 2. Two years between Waters' PREA complaint and the alleged false misbehavior report is too attenuated to support an inference of a causal connection. See Moore v. Kwan, No. 12-CV-4120, 2016 WL 9022575, at *15 (S.D.N.Y. Mar. 30, 2016), aff'd, 683 F. App'x 24 (2d Cir. 2017) ("Courts have found causation based upon temporal proximity where the lapse between the protected act and the adverse action consisted of a few months, not years."); see also See Espinal, 558 F.3d at 129; Kasiem v. Rivera, No. 09 Civ. 9665(DLC), 2011 WL 166929, at *7 (S.D.N.Y. Jan. 18, 2011) (dismissing the plaintiff's retaliation claim where the adverse action occurred nearly two years after the protected conduct as "twenty months is too long a gap in time to support [an inference of causation]."); cf. Jordan v. Garvin, No. 01CIV4393LTS/GWG, 2004 WL 302361, at *6 (S.D.N.Y. Feb. 17, 2004) ("[T]he existence of a temporal connection as close as the one present here – just two days – is sufficient by itself to establish the requisite inference of a causal connection."). However, even assuming plaintiff could establish retaliatory motive via temporal proximity, "without more, such temporal proximity is insufficient to satisfy [the

plaintiff's] burden to bring forward some evidence of pretext." Simpson v. N.Y.S. Dep't of Civil Servs., 166 F. App'x 499, 502 (2d Cir. 2006) (summary order).

Despite this gap, the undersigned finds that the record includes circumstantial evidence that creates a genuine issue of material fact regarding the motivation behind Sgt. Melendez's decision to issue the misbehavior report.  In support of the motion for summary judgment, Sgt. Melendez avers that he was not assigned to the law library in 2013 and that he was not aware of any legal assistance that Waters provided to other inmates.  Melendez Decl. ¶¶ 32, 33.  Sgt. Melendez states that he did not speak to Waters or non-party officer Slater about any grievance or lawsuit filed against non-party officer Slater, and had no knowledge of any lawsuit. Id. ¶¶ 30, 31.

However, in further support of his claim of retaliatory intent, Waters testified his PREA complaint against non-party officer Slater was "common knowledge," and that Sgt. Melendez made numerous references to the PREA complaint when he harassed and threatened him in September 2012. Dkt. No. 81-5 at 24, 27.  Specifically, Sgt. Melendez told Waters, ". . . you know, Slater's still here" and "you really didn't get that much done – accomplished with him[.]" Id. at 27.  Waters also contends that Sgt. Melendez told him not to provide certain inmates with legal assistance because they "create problems." Id. at 29-30.  Waters identified these inmates, by name, during his deposition. Id. As to his prior good disciplinary record, Waters testified that he served as a law library clerk for seven years and was never accused or charged with accepting compensation for legal services. Id. at 17, 37.  Indeed, the record establishes that from 2007 until January 2013, Waters received only three

misbehavior reports resulting in two Tier II hearings and one Tier III hearing.[15]  Waters I, Dkt. No. 116-3 at 2.  Finally, as to whether plaintiff was vindicated, the record establishes that Waters' Article 78 petition was granted resulting in H.O. Gutwein's determination being overturned and expunged from Waters' records.  Dkt. No. 84 at 12-14.  However, the undersigned notes that the Article 78 proceeding challenged only Waters' Fourteenth Amendment due process rights, and did not discuss whether Sgt. Melendez retaliated against him.  See id.

Even disregarding Waters' disciplinary hearing vindication, a determination of whether Sgt. Melendez was aware of the PREA complaint or threatened Waters for providing legal assistance to certain inmates involves an issue of credibility that is inappropriate to be decided for purposes of this motion.  Taking the lack of disciplinary history, coupled with the statements attributed to Sgt. Melendez, which, if true, strongly suggest that he was motivated by retaliatory intent, these circumstances present genuine issues of material fact concerning the nexus element of the retaliation test, which preclude the entry of summary judgment in connection with the retaliation claim.  See Roland v. McMonagle, No. 12-CV-6331, 2015 WL 5918179, at *6 (S.D.N.Y. Oct. 9, 2015) (finding an issue of fact as to retaliation despite the gap in time between the protected conduct and alleged attack as the plaintiff presented evidence that the defendants were aware of the complaints and mocked him for filing grievances during the attack).

---

[15] DOCCS conducts three types of inmate disciplinary hearings.  See 7 N.Y.C.R.R. § 270.3; see also Hynes v. Squillace, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges.  Hynes, 143 F.3d at 655 n.1.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU.  Id.  Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits.  Id.

### d. Discipline Absent Protected Conduct

Sgt. Melendez argues that, even assuming the evidence creates a material question of fact as to whether he had retaliatory intent, he would have issued the misbehavior report even in the absence of the protected conduct. Dkt. No. 81-2 at 16-18. "[T]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." Hynes, 143 F.3d at 657 (quoting Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994). "Defendants [may meet] their burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct if 'it was undisputed that [the inmate plaintiff] had in fact committed the prohibited conduct' for which he had been cited in a misbehavior report." Id.

Here, Waters did not concede to the charges, and has denied accepting compensation for legal assistance from any inmate. See Dkt. No. 81-5 at 67. The record does not contain any evidence that Waters was previously disciplined for accepting compensation for legal services. Indeed, C.O. Muschett testified that he was not aware of Waters accepting compensation for legal services. See Dkt. No. 84 at 4. Thus, affording Waters special solicitude, there is a genuine issue of material fact related to whether Waters attempted to trade compensation for legal services. See Gayle, 313 F.3d at 684 (denying summary judgment where it is disputed whether the plaintiff committed the prohibited conduct); see Rivera v. Lawrence, No. 9:05-CV-0967 (TJM/GHL), 2009 WL 1734735, at *6 (N.D.N.Y. June 18, 2009) (finding an issue of fact where the plaintiff denied the charge and the documentary

evidence and testimony at the disciplinary hearing did not support the charge). As Sgt. Melendez has not met his burden of establishing that he would have filed the misbehavior report even in the absence of the protected conduct, it is recommended that his motion for summary judgment on this ground be denied.

## IV. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 81) be **GRANTED** with prejudice on the grounds that plaintiff failed to exhaust his administrative remedies. Alternatively, if reached , Defendants' motion for summary judgment should be **GRANTED** as to plaintiff's First Amendment retaliation claims against C.O. Muschett, and **DENIED** as his plaintiff's First Amendment retaliation claims against Sgt. Melendez; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fᴇᴅ R. Cɪᴠ. P. 6(a), 6(e), 72.[16]

Dated: May 18, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[16] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. Fᴇᴅ. R. Cɪᴠ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).